UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ROZELL WILKES #682781,

                Plaintiff,          Civil Action No.: 14-11558
                                    Honorable Denise Page Hood
v.                                 Magistrate Judge Elizabeth A. Stafford

KENNAKER, *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT [R. 30]

      Plaintiff Rozell Wilkes, a prisoner advocating *pro se*, proceeds on a

verified amended complaint against Defendants, all correctional officers

with the Michigan Department of Corrections ("MDOC"), alleging various

violations of his constitutional rights. [R. 14]. Defendants have filed a

motion for summary judgment to which Wilkes did not respond despite

repeated court orders to so. [1] Thus, for the reasons set forth below, the

_____

[1] When Wilkes failed to respond by the original due date of August 6, 2015, the Court issued an order requiring his response by August 31, 2015. [R. 33]. The Court later granted a motion for extension of time filed by Wilkes, giving him until September 11, 2015 to respond. [R. 34, 35]. A show cause was entered on September 21, 2015 after Wilkes had still not responded, [R. 37], but then the Court learned that Wilkes had been transferred to another prison. On October 22, 2015, the Court issued a second order to show cause and mailed it to both Wilkes's prior and current facility. [R. 38]. Wilkes did not respond by the November 12, 2015 due date.

Court **RECOMMENDS GRANTING** Defendants' unopposed motion for

summary judgment.  **[R. 30]**.[2]

## I.    BACKGROUND

Wilkes alleges that an unknown correctional officer opened his cell

door and permitted another inmate to assault him, leading to physical and

emotional injuries.  [R. 14, PgID 60].  Wilkes identifies the offending officer

as either "C/O Rennaker and/or C/O Gollnast and/or C/O Mandy and/or

some other Housing Unit 4 assigned Correctional Officer."  [*Id.*].

Wilkes further alleges that Defendant Timiya Butts, who was not

present during the altercation, subsequently wrote Wilkes a misconduct

ticket for fighting with the other inmate, in conspiracy with the other officers

to cover up the fact that Wilkes was unilaterally assaulted.  [*Id.*, PgID 60,

66].  Wilkes's misconduct was dismissed after an administrative hearing

officer found that he had been acting in self-defense during the assault.

[*Id.*, PgID 77].

Wilkes then filed a grievance regarding the assault, alleging a failure

to protect.  [*Id.*, PgID 78].  His grievance did not specifically identify the

officer who opened the door, and Wilkes later admitted (in his step three

appeal) that he did not know which officer was responsible because he was

---

[2] In light of this recommendation, the Court, in a separate order, denies
Defendants motion to stay discovery [R. 36] as moot.

sleeping at the time the door was opened.  [*Id.*, Tr. 78, 87-88].  Wilkes's
grievance also did not address the issue of a conspiracy to cover up the
assault through issuance of a false misconduct ticket.  [*Id.*].

Defendants Herbert, who was tasked with investigating the grievance,
came to the conclusion that Wilkes only filed it in retaliation for being found
guilty of misconduct for fighting, even though Wilkes had actually been
found not guilty.  [*Id.*, Tr. 80].  Herbert also stated that the assault had
occurred "during mass movement," which Wilkes noted was contradicted
by the time the offense occurred.  [*Id.*, Tr. 80, 87].  Defendant Steward
reviewed Herbert's step one response and signed it, denying Wilkes's
grievance.  [*Id.*, Tr. 80].  Wilkes appealed this denial through the remaining
steps of the process, despite not receiving a response at step two.  [*Id.*, Tr.
81, 83-87; 30-3, PgID 167, 175].  At an unidentified point in time, Wilkes
alleges that he was transferred to "a disciplinary facility," as a result of filing
this grievance.  [R. 14, PgID 62].

Wilkes's amended complaint alleges three claims: that Defendants
failed to protect him from the inmate assault; that Defendants violated his
due process rights in filing a false misconduct charge against him and in
failing to adequately investigate and respond to his grievances; and that
Wilkes was a victim of retaliatory transfer due to his grievance activity.  [*Id.*,

PgId 64-66].

Defendants move for summary judgment, arguing that Wilkes has failed to properly exhaust the majority of his claims.  They also argue that Wilkes has not properly alleged certain defendants' personal involvement in the alleged unconstitutional conduct.  Defendants further contend that Wilkes has not stated a claim for failure to protect, has no constitutional right to an effective grievance procedure, and has not stated a constitutional violation regarding the allegedly false misconduct charge.  As noted above, Wilkes has not filed a response, although he did attest to veracity of the facts alleged in his amended complaint.  [R. 14, PgID 71]. The Court finds that none of Wilkes's claims can withstand summary judgment.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  The party seeking summary judgment bears the initial burden of informing the Court

4

of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Liberty Lobby*, 477 U.S. at 248. A dispute about a material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). The opposing party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position

5

will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252.

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## III.   ANALYSIS

The Court finds that Wilkes has failed to exhaust all but his failure to protect claim, and has failed to adequately show that any Defendant either directly participated in permitting the assault or knew of a substantial risk that Wilkes would be assaulted.  Therefore, Defendants' motion for summary judgment should be granted.

### A.   Exhaustion

Wilkes's due process and retaliatory transfer claims should be dismissed for failure to properly exhaust.  A prisoner bringing an action under 42 U.S.C. § 1983 must exhaust all "available" administrative

6

remedies.  42 U.S.C. § 1997e(a).  *See Jones v. Bock*, 549 U.S. 199, 218-20 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust these remedies even if the specific relief he or she seeks is not available through state administrative procedures.  *See Booth*, 532 U.S. at 740-41.  Moreover, exhaustion is required even when a prisoner subjectively believes that the remedy is not available or finds the procedure to be "ineffectual or futile."  *Napier v. Laurel Cnty. Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotation marks and citation omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones*, 549 U.S. at 204.

The PLRA requires "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), but the Act does not define what "proper exhaustion" entails. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In *Jones v. Bock*, the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required

7

to specifically plead or demonstrate exhaustion in their complaints." *Id.* at

216.  Consequently, the defendant bears the burden of production and

persuasion on the issue of exhaustion.  *Surles v. Andison*, 678 F.3d 452,

458 (6th Cir. 2012).  If the complaint contains a mixture of exhausted and

unexhausted claims, the court must dismiss the unexhausted claims and

proceed with the rest.  *Jones*, 549 U.S. at 219-24.

When feasible, the Court will decide exhaustion disputes before

addressing the merits of the claims.  *See Albino*, 747 F.3d at 1170.  A

dismissal for failure to exhaust administrative remedies, even when

decided on summary judgment, [3] is without prejudice.  *Boyd v. Corr. Corp.*

*of America*, 380 F.3d 989, 994 (6th Cir. 2004).

MDOC Policy Directive 03.02.130 sets forth a three-step procedure

prisoners must follow in order to exhaust grievances.  *See* Policy Directive

---

[3] The majority of Circuit Courts that have addressed the issue – i.e., the
Second, Third, Fifth, Seventh, and Ninth Circuits – hold that a motion for
summary judgment is the proper procedure to decide exhaustion.  *See*
*Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (*en banc*) (collecting
cases).  Although it has not addressed the issue specifically, the Sixth
Circuit appears to support the use of a summary judgment motion to
resolve an exhaustion dispute.  *See*, *e.g.*, *Surles*, 678 F.3d 452 (reviewing
district court's decision granting summary judgment for failure to exhaust
administrative remedies under the PLRA); *Risher v. Lappin*, 639 F.3d 236
(6th Cir. 2011) (same).

03.02.130 (effective July 9, 2007).[4]  First, the prisoner must attempt to resolve the problem with the allegedly offending staff member within two business days of becoming aware of the grievable issue, unless prevented from doing so by circumstances beyond his or her control.  *Id.* at ¶ P.  If the prisoner is unable to resolve the issue, he or she has five business days to file a Step I grievance with the grievance coordinator .  *Id.* at ¶¶ P and R.  "Information provided [in the Step I grievance] is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R.   The prison officials then have fifteen business days to respond to the grievance.  *Id.* at ¶ X

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he or she has ten business days (from either the date of receipt of the response or the date the response was due) to submit a Step II grievance appeal.  *Id.* at ¶ BB.  Again, prison officials have fifteen business days to respond.  *Id.* at ¶ CC.  Finally, if the prisoner continues to be dissatisfied with the Step II response, or does not receive a timely response, he or she may, again within ten business days, file a Step III

---

[4] The Policy Directive is available at: https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

grievance appeal. *Id.* at ¶ FF.

Here, Wilkes filed only one grievance relevant to the claims in his complaint, which alleges that an officer or officers opened his cell door and permitted another inmate to enter and assault him while he was sleeping. [R. 30-3, PgID 167, 175-86]. Although his grievance was written after his misconduct acquittal, he did not allege that the misconduct ticket was retaliatory or written as part of an attempt to cover up the assault.[5] Nor did Wilkes file grievances against any of Defendants regarding their handling of his grievance investigation or response. Finally, there is no evidence Wilkes grieved his retaliatory transfer.[6] For these reasons, Wilkes's due process claims and retaliatory transfer claim should be dismissed without prejudice for failure to exhaust.

---

[5] While his step three appeal does allege that the "Administration failed to do an investigation to determine" the identity of the offending officer, Wilkes does not allege this as a basis of his due process claims. [R. 30-3, PgID 179].

[6] The grievance report filed with the Court reflects that Wilkes wrote three grievances total, one of which was at his transferee facility, but that document does not include the substance of the grievances. [R. 30-3, Tr. 167]. Even if a grievance pertained to the alleged retaliation, dismissal would be required because Wilkes has failed to allege when his transfer occurred, which specific defendants were involved, or the causal connection between the grievance writing and the transfer. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (articulating the factors necessary to state a retaliation claim).

### B.    Failure to Protect

Wilkes's remaining claim, which alleges failure to protect, cannot withstand summary judgment on its merits.  It is true that "prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). However, in order to state an Eighth Amendment claim for failure to protect, Wilkes must allege that Defendants were "aware that [Wilkes] was vulnerable to assault and fail[ed] to protect him." *Bishop v. Hackel,* 636 F.3d 757, 767 (6th Cir. 2011) (citation omitted).

Here, in a sworn statement, the assailant admitted to having another prisoner divert Defendant Darnell Mandy's attention so that he (the assailant) could access the officers' panel and unlock the door to Wilkes's cell.  [R. 1-1, PgID 11].  For their part, Defendants Gollnast and Rennaker affirmatively deny any knowledge that the Wilkes was vulnerable to an attack, any involvement in helping the assailant access Wilkes's cell and any participation in a conspiracy to cover up the assault.  [R. 30-8, 30-9]. Moreover, although Wilkes alleges in his complaint that defendants Mandy, Charles Gollnast and Donald Rennaker may have participated in the assault, he acknowledges that the offender could have been "some other Housing Unit 4 assigned Correctional Officer."  [R. 14, PgID 60].  More is

11

required to survive summary judgment, and Wilkes's claim for failure to

protect should be dismissed, with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends **GRANTING**

Defendants' motion for summary judgment **[R. 30]** and **DISMISSING**

Wilkes's failure to protect claim **WITH PREJUDICE**.  His due process and

retaliation claims should be dismissed **WITHOUT PREJUDICE** for failure to

exhaust, for the reasons cited above.


Dated: November 30, 2015                    s/Elizabeth A. Stafford
Detroit, Michigan                           ELIZABETH A. STAFFORD
                                            United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P.

72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.

Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
